Yeah, please support Council. Norm. My name is Jeff Haralson. I'm an attorney in Texarkana now represented Bobby Hampton at trial as well as Mr Harris, Assistant U. S. Attorney. We were both once you tried this case. There are two issues that we have before you this morning. One is a sentencing issue and one is an issue that occurred at the trial. I'll address the sentencing issue first because I don't think that it will take very long. Um the issue that was before you in our briefs was whether or not Arkansas state court conviction for residential burglary is a crime of violence that would trigger the sentencing under the Armed Career Criminal Act would be the 15 year mandatory minimum. Since we filed our briefs or at least our initial briefs, this court has decided a case of Sims um where this court determined that Arkansas state convictions for residential burglary are not crimes of Mr Hampton's conviction for Arkansas residential burglary did not trigger the Armed Career Criminal Act. That was the ruling by the district court. And since we have filed our initial briefs, this court has made that ruling. So um and since reaffirmed it in an unpublished case named Robinson. So unless I need to spend some time on that, I don't know that I will. Great. The second issue I want to address with you is the trial issue that we talked about, which is comes up under Batson versus Kentucky. As I stated in my brief, discrimination toward a single juror is still discrimination and it violates the 14th amendment to the United States Constitution. What we're talking about is during jury selection for Mr Hampton, Mr Hampton was an african american male and the only two african american panel members were peripherally struck by the government during the jury selection phase. I made a batson objection to those periphery challenges specifically to jurors 22 and 45. And I just named them those in my brief rather than using their proper names. After I made my batson challenge, the assistant U. S. Attorney had given their reasons for doing so. Um, and I've just quoted straight out of the transcript. Their response was as to these two specifically after talking with them and for dire and observing them, I felt they had negative body language, arms crossed some of the time, just not very responsive to us. Basically, they had negative body language and that they didn't say anything. Of course, juror number 22 had had a bench conference with the court. For some reason, the transaction of the conversation between juror 22 and the court was not recorded. But nonetheless, the court did explain to us that the juror had explained that she had a pending civil suit against walmart and didn't want the other jurors to know about that juror to sit. Correct. Um, that juror was allowed to remain on the jury. Uh, that was the, um, ruling by the court that she sustained my objection under batson as to juror 22. Correct. And denied my objection about the one that that you're here for. Basically, you're number 45. The one that was where my best objection was denied. Correct. Juror number 45 was not allowed to batson. Um, it's our argument that the court abused their discretion by denying, um, juror number 45 to be allowed to sit. Um, our position that we made our prima facie case. What was, what was the reason that was given the non, um, racial or non, uh, uh, discriminatory purpose or for the reason that the United States gave was negative body language, arms crossed some of the time, just not very responsive to us. And that was for both jurors 22 and 45. My argument mainly focuses on the fact that to me there's not a distinguishable difference between 22 and 45. Uh, the judge kind of, if this is probably not the proper term to use, but split the baby and, uh, sustained one of my objections and denied the other. Wasn't there just a little bit more to juror number 45 in the prosecutor's explanation that that it was worse than 22. They did want to make that explanation that they're, they're negative the whole time, arms crossed all the time. And why isn't that additional explanation distinguishing between 22 and 45 enough to legitimize the ruling of the district court? Just that I don't think it's distinguishable enough between 22 and 45 that, um, and I understand body language may be a race neutral reason, but they had the same reasons for both jurors and just allowed one and allowed the other. Um, um, that's where I'm alleging that the abuse of discretion came in was that to me they were similarly situated jurors and the court found that one should be allowed to sit, whereas the other was not. Did the prosecutor say as to 22 that she'd never looked at him, wouldn't look at him in any respect, which seemed to be how he characterized juror 45. To me, their explanations for both were similar. Um, they did go a little further in talking about 45. Um, but uh, juror 22 is one of the few I had with arms crossed basically the entire time to me. And that was the juror that was allowed to stay on the jury. Um, so to me that the explanations were similar enough that the court should have allowed both jurors to serve and therefore about not allowed juror 45 to serve that violated Batson in the 14th amendment. Well, if you've read the Batson precedents, you know it's a very high standard to me when there is a race neutral reason stated that's not clearly implausible or clearly basically nearly absurd. Yes, sir. I understand that especially when I, when I get appeals and I have an abuse of discretion standard, I know I've got a hard road and I understand that the appeals courts are pretty deferential when it comes to, um, district court rulings on those. But that's our position. And we would ask the court to reverse and remand for a new trial based on this Batson violation. You all, you also raised another argument in your brief right about how the other, um, other jurors were treated or how they were, um, asked questions and, and which ones were asked, which were not. Was that a part of the record? It was not part of the record. Um, I didn't do, I'll call it a statistical analysis. That was something that I gleaned from the record after I was reading that. That was not an argument I made to the trial court, but at least, um, uh, in our position that it's relevant because, um, when you're there on trying the case and on the fly, I didn't have an opportunity to think we're jot down who all spoke and who all didn't. And I had to go back and, um, make that statistical analysis for purposes of the brief. And I think that's where the government came back and said that would be clear error if I asked the court, if I didn't preserve that issue properly, we'd ask the court to at least find clear error on that point as well. And is that, is that how you agree we should consider that? You think about it purely that the district court did not have an opportunity to consider those factors in making the all relevant circumstances that Miller would require. Um, obviously then there would be a clear burden that I would have. But, um, you um, but, um, at least made the best objection and the court made its ruling. And I just wanted to offer that additional evidence that I was able to glean from the record. So based on those issues, we would ask the court to reverse and remand. Do you believe that the plain error standard would apply in a situation where you in fact raised the issue or at least the discussion took place about other jurors did not answer questions as well? Or do you think that somehow going through the record and trying to quantify it changes its character? I don't believe that. I think it still would be abusive discretion. Um, but, um, I'm required to make a timely specific objection and get a ruling on it. And I've made a timely specific objection under Batson and I got a ruling on it satisfied with that ruling. And that's why we're here today. I know I haven't taken up all my time. I think there are no obligation. Probably pleases the court. So, um, I will. I've reserved an additional five minutes. If I have anything else to say after Mr Harris, I will certainly be glad to address the court. Thank you. Thank you, Mr Harrelson. Thank you, Mr Harris. May it please the court. My name is David Harris. I represent the United States and along with my trial counsel or co council, I tried this case. The issue before the court is whether or not the district court committed clear error in denying Hampton's Batson challenge to number 45. I submit clearly it did not to put things in perspective. I think it's important to that actually responded to any of the questioning by the court or the lawyers based on a review of the record of the 23 questions posed by the district court. Only four questions drew responses from the from the panel of all the questions that were posed by the attorneys, whether it be the prosecutor or Mr Harrelson. Only two identified jurors responded to questions. Therefore, in any case, the lawyers are required. They have to look at the jurors body language to make determinations of whether or not they're going to strike those individuals. That's exactly what we did in this case. We struck 22 45 and 27, which I would note was white. 27 was struck for the exact same reasons that 22 and 45. So once that issue was court, we really skip step one of the analysis that the court is required to go through in the prima facie case. But that essentially became moot when we offered race neutral explanations for the jurors. 22 and 45. Our initial response was was lumped in together because we addressed both of those jurors and we said that it was negative body language. 22 and 45 had their proceedings. That's that's essentially what was said. The court focused on juror number 22 and said, I didn't see anything from 22 and we responded. Well, there was a sidebar that the court had with 22 and the lawyers were not privy to that sidebar that caused us some concern as well. And that's in the record. We expressed that with the district court, um, with respect to 45 45. And this is reflected in the record was sitting right behind me. I was looking her the entire time she wouldn't make contact eye contact with me. I view that as negative body language as demeanor that would be inconsistent with wanting someone that wanted to serve on the jury. And so that was an additional reason why we struck 45. And I believe the record also says that 45 was clearly upset when her name was called to sit in on that jury. So you've if I understand your opening statement, you're saying that the body language and the appearance of the of the body language that you're watching the demeanor of the, um, potential jurors is particularly important because not many of them responded to questions. Is that absolutely your honor? How much time are you given for voir dire and your district? Every judge varies. This particular judge is pretty lenient in terms of how much time we have. She goes through her questions, which are pretty standard, and she doesn't impose a time limit on the lawyers. But she always reminds the lawyers that, you know, jurors get tired and they probably don't want to sit here all day and listen your questions. So is it your position that you, the parties did not have sufficient opportunity to asked ask direct questions to the folks who weren't answering questions? No, we had sufficient time, but you don't want to put anybody on the spot. And most of the time it's been my experience. When I ask questions, I could ask 50 questions most of time, unless I call someone out as if they're in law school, they're not going to if they're disinterested in those, those elements are key. And the this circuit talks about those things. In all the cases that we sought in our brief things such as chuckling, sitting back in your chair, arms crossed, not making eye contact. Those are all race neutral explanations. And I think our case law is is clear on that. Do we look at this differently when there hasn't been an effort to try to pull out answers to particular questions to give the jurors an opportunity? So you could say, you know, all right, those questions, the way they answer those, I'm a little concerned, not so concerned. Should we look at it differently? No, Your Honor, I I've never seen a criminal case where the lawyers really tried to pry into the jurors because you don't want to offend the jurors. You don't want to put them on the spot. Now, sometimes that happens, but from my perspective, that's not what I want to do. And when the defense is asking questions to the jurors, I'm sitting there along with my co counselor and we're taking notes as to how they respond non verbally. I mean, there's a difference in a juror not saying anything and a juror displaying negative body language. Big difference. And that's something that that should be distinguished here. You know, just because you don't say anything, that's not necessarily negative. Sometimes that could be positive if you're just sitting there listening, which most of them do. But sometimes it's it's obvious based on the body language, um, that either they can't be fair, they're not interested, they don't want to hear this and that's what a peremptory strike is for. Obviously, you cannot strike somebody based on their race. But Batson also talks about a criminal defendant is not entitled in whole or in part to persons of his race. If you reviewed any, um, psychological literature indicate that that type of expression from a prosecution. No, Your Honor, I haven't. That's that's been based on my experiences 14 years as a prosecutor and trying cases. And that's, uh, I haven't read any psychological literature on that. There are human behavior reasons for being uncomfortable with eye contact besides indifference or prejudice. Sure. If that were just one factor, that would be one thing. But you have to take it in totality and look at how the jurors responding, whether it be the arms crossed, head down. Those are those are things. I mean, it's not exact science, right? But you have to make those determinations based on what you have. Well, you've just described a cultural response that is entirely appropriate for every Native American person in the United States that when they're confronted with a person of authority and power, they have a natural blocking movement and they divert their eyes down because it is culturally inappropriate to confront either a father figure or an authority figure. And, you know, I think that there's more to life. I mean, I think if you're going to go by your gut, you should, you should expand your worldview because, um, I'll just tell you that what you as a person who presides over Indian country cases all the time, you've described half, three fourths of the jurors who are Native American over, over the age of 40 to a T. You struck them all. Uh, it would be an inappropriate race based determination in my opinion. In any event, can I respond? Your honor? You may. Other get negative body language from 27. We did 27 happened to be white. That wasn't addressed. So it's, you know, you have to look at you. You have to make those decisions based on bot. If they're not talking to you, if they're not answering the question, if they're not answering the court's question, that is the only thing you have to look at in this circuit and the Supreme court are clear on that. And when we brought those factors up, the defense didn't even rebut that. The response was, and I quote, obviously they have more sets of eyes than I do. I didn't specifically see this. Um, just very briefly, let me touch on the second issue. I understand this court in Sims has ruled against this on that. I understand that decision is binding. Um, we requested a rehearing, uh, requested on bonk that was denied. It's my understanding there's a petition, uh, for the Supreme Court on that case. But that said, I don't think there's a whole lot to say on that case. If the court has any other questions, that's the issue number one. I'd be more than happy to answer them. Thank you. Thank you, Mr Harris. Mr Harrelson, do you have some rebuttal? Not really rebuttal. Um, in this case, Mr Hampton had filed a, it's not really a brief, but it was a pro se filing for him to the court to consider other issues. Um, I made a reasoned decision not to include any of those issues in any breaking that I had after going through them all. But at least if the court had any questions or comments about any of those, I'm happy to address them. No, it seemed mainly it was, he was not particularly pleased with your service. So that was evident to us. I mean, we'll, we'll take a look at what he's that's fine. But I'm certainly here and able to address any of those issues if the court wanted to. But other than that, I think I've said everything I need to say about the issue before the court. No, sir. Any additional questions? I see none. Thank you for your time. Thank you, Mr Harrelson. And thank you for serving under the Criminal Justice Act and representing your client. Thank you both counsel for your presence here today. The argument